397 So.2d 524 (1981)
Mary Sue Brewton WOODALL, Plaintiff-Appellee,
v.
Patrick Roney WOODALL, Defendant-Appellant.
No. 14489.
Court of Appeal of Louisiana, Second Circuit.
March 23, 1981.
Rehearing Denied May 1, 1981.
On Rehearing May 4, 1981.
*525 Richie & Richie by C. Vernon Richie, Shreveport, for defendant-appellant.
James L. Fortson, Shreveport, for plaintiff-appellee.
Before PRICE, MARVIN and JASPER E. JONES, JJ.
En Banc. On Rehearing May 4, 1981.
*526 PRICE, Judge.
Patrick Roney Woodall has appealed a judgment of August 21, 1980, reducing the amount of child support payable to his former wife, Mary Sue Brewton Woodall, and the judgment of September 8, 1980, accruing past due amounts of unpaid installments and finding defendant in contempt of court for nonpayment.[1] His appeal raises three issues:
(1) Whether the trial court abused its discretion in reducing his child support payments by only $200 per month;
(2) Whether the trial court abused its discretion in trying him for contempt of court in his absence; and
(3) Whether the trial court abused its discretion in finding him in contempt of court for willfully violating the trial court's judgment.
On the first issue, the record discloses that on April 11, 1979, by consent and agreement of the parties, judgment was rendered accruing $3,800 in past due alimony and child support and ordering Woodall to pay his wife $800 per month as child support. The judgment also ordered him to pay medical and dental bills for the two minor children; to maintain hospitalization and medical insurance on the children; and additionally, to pay a $150 per month mortgage note and insurance on an automobile for one of the children.
On March 24, 1980, Woodall filed a rule seeking a reduction in the child support award. He alleged he was then unemployed and was in the process of filing bankruptcy proceedings and was unable to continue to pay the amount fixed in the consent judgment of April 11, 1979. After hearing evidence on the rule, the trial judge ordered a reduction from $800 to $600 in the sum payable directly from Woodall to his wife. The court ordered a continuation of the other obligations imposed on Woodall in the previous judgment, i. e., payment of a car note of $150; liability insurance on the automobile; medical and dental costs for the children; and maintenance of hospitalization and medical insurance for the children.
The record shows the total obligation of Woodall under the April 11, 1979, judgment was approximately $1,100 ($800 plus costs of ancillary obligations required by the terms of the judgment). At the time the consent judgment was negotiated and rendered, he was engaged in real estate activities with a partner. Their principal occupation was the promotional development of apartment projects. In 1978, the year prior to the consent judgment, Woodall had an income of $28,000 from this source. The business of the partnership apparently ceased in the spring of 1979. Woodall filed bankruptcy proceedings in March 1980. He contends he has had no meaningful source of income since 1979, and that although he has sought employment commensurate with his education as an accountant and his experience in real estate promotion, he has been unsuccessful in finding suitable employment. At the time of trial of the rule he had obtained employment as a night auditor at the Sheraton Hotel in Bossier City at a pay scale of $4.25 an hour which gave him a net monthly income of approximately $600 per month.
Although the trial court ordered a reduction of $200 per month in the award, the total amount which Woodall must continue to pay is approximately $900 per month ($600 plus ancillary provisions of $300). This is obviously in excess of the net amount of his earnings at the time of trial. The trial court based its refusal to grant a more extensive reduction on a finding that Woodall has a "voluntary change of circumstance" and that his failure to seek employment paying higher compensation was "unreasonable" and "unjustified."
*527 The court found that because Woodall had an accounting degree and a real estate brokers license that he was capable of obtaining more suitable employment from which his earnings would be sufficient to pay substantially all of the amount awarded in the prior judgment. The court was of the opinion Woodall had not been in good faith in seeking employment and his actions deprived his children of "continued reasonable financial support."
The trial court relied principally on the decisions in Mosley v. Mosley, 348 So.2d 225 (La.App. 3d Cir. 1977), writ refused 350 So.2d 1213 (1977), and Sykes v. Sykes, 308 So.2d 816 (La.App. 4th Cir. 1975). Mosley was concerned with a situation where a husband voluntarily quit employment earning $20,000 to attend law school. Sykes declared that "in order for a husband to excuse himself from the obligation to provide minimal financial assistance to a wife and children he must show that he is absolutely unemployable, not merely that he is unemployed at the time."
We do not find either of these cases necessarily controlling the instant situation. Here, the evidence shows Woodall did not voluntarily quit his occupation in the real estate development field. Economic conditions have stymied further development of apartment projects. This is a factor which is of such common knowledge that the court can accept Woodall's testimony to this effect without further corroborating evidence. Further, the evidence does not show Woodall has refused to work, although it may be he has not pursued employment opportunities to the ideal degree as discussed by the trial judge.
The evidence does show he made a minimum of 14 applications to employers or through employment services between November 1979 and February 1980. He apparently was soliciting employment commensurate with his prior work experience and educational background. Whether or not he could have found immediate employment as a basic accountant solely on the qualification of a degree earned some ten years earlier is highly speculative since he had not followed this profession and had no work experience to offer.
We agree with the trial judge's observation that Woodall should motivate himself to climb back to the earning status which he formerly occupied, and that his present employment as a night motel auditor is not commensurate with his educational background. However, in view of the overall evidence, we cannot say that his present financial plight is entirely "voluntary" or that he has made no effort to become employed.
We therefore are of the opinion that the trial court abused its discretion in not adjusting the child support award to an amount more commensurate with Woodall's present ability to pay. The record before us does not contain the prior proceedings showing the needs for the two minor children. However, this is unnecessary for present purposes as the only issue before us is the determination of the maximum amount which Woodall can pay under his changed circumstances.
In view of Woodall's present limited earnings and lack of any assets providing financial ability to pay the sum for which he is presently obligated for support, the award should be reduced to $400 per month. We recognize that even this amount when added to the remaining provisions of the judgment relating to car payment, insurance, and medical would appear to exceed his present earnings and not allow him a sufficient sum for his own maintenance. However, we are taking into consideration his testimony that he was, at the time of trial, seeking additional employment for his off-duty daytime hours to supplement his income from night employment as a motel auditor.
On the second issue, appellant contends that the trial court erred in trying him for contempt of court on August 21, 1980, in his absence.[2] The record shows *528 Woodall's attorney was served with the contempt rule ordering him to appear on this date, and that Woodall was notified of the hearing, and that his absence at the hearing was voluntary and intentional. Nevertheless, appellant contends that because an action for contempt of court is quasi criminal in nature, a defendant in a contempt proceeding should be afforded all the rights of a defendant in a criminal proceeding. Appellant's argument has no merit under the facts of the instant case. The record shows proper notice and service. The attorney representing Woodall objected to proceeding without his client's being present but admitted he was fully aware of the proceeding, and that his absence was apparently intentional. A recess was called to allow counsel time to persuade defendant to attend the hearing. Although Woodall was contacted and given sufficient time to appear, he failed to do so. Under these circumstances due process requirements were met.
In the remaining issue, appellant contends there was no evidence presented to show that his violating the trial court's judgment was willful, which is essential to a finding of contempt. This argument is also without merit. The testimony presented showed Woodall was in arrears in paying the judgment ordered by the court. It was therefore his burden to show any legal excuse for nonpayment. Although Woodall was afforded the opportunity to appear and carry this burden, he voluntarily chose not to avail himself of this opportunity. We find no abuse of discretion in the trial court's finding Woodall in constructive contempt.
For the foregoing reasons the judgment of April 11, 1979, ordering a reduction from $800 to $600 in the amount of child support payable by Patrick Roney Woodall to Mary Sue Brewton Woodall, is amended to reduce the amount payable to the sum of $400, payable $200 on the first and fifteenth of each month, beginning March 24, 1980.
The judgment is otherwise affirmed insofar as it continued all other provisions of the judgment rendered on April 11, 1979.
It is further ordered that the judgment rendered on August 21, 1980, and signed September 8, 1980, accruing past due installments of child support and holding appellant, Patrick Roney Woodall, in contempt for his failure to pay child support as directed by the court is affirmed. Costs of this appeal are assessed to appellant.
En Banc: PRICE, HALL, MARVIN, JASPER E. JONES, and FRED W. JONES, Jr., JJ.

ON APPLICATION FOR REHEARING
PER CURIAM.
The application for rehearing calls our attention to several alleged errors in the dates of the judgments below and here. Accordingly, and in order to clarify our judgment, we amend the first paragraph of our judgment to read:
For the foregoing reasons the judgment of August 21, 1980, ordering a reduction from $800 to $600 in the amount of child support payable to Patrick Roney Woodall to Mary Sue Brewton Woodall, is amended to reduce the amount payable to the sum of $400, payable $200 on the first and fifteenth of each month hereafter.
The judgment of the lower court which we amend is not the earlier judgment of April 11, 1979, but the judgment appealed which is dated August 21, 1980.
The reduction in support made by this court will not become effective until such time as this opinion becomes a final judgment. Frederic v. Frederic, 302 So.2d 903 (La.1974); Bruner v. Bruner, 373 So.2d 971 (La.App. 2d Cir. 1979); Macip v. Wallace, 381 So.2d 869 (La.App. 3d Cir. 1980).
As herein restated and corrected, the opinion of this court is not in error and the application for rehearing is therefore denied.
NOTES
[1] There has been no question raised regarding this court's authority to review a contempt judgment on direct appeal rather than by application for supervisory writfor a discussion of this issue see City of Monroe v. Evans, 385 So.2d 912 (La.App. 2d Cir. 1980). Following the rationale of Evans we can properly review this issue as it is ancillary to the other judgment before us for review.
[2] Sentencing was deferred by the trial court and a bench warrant issued to insure appellant's appearance before the court for this purpose at a future date.